

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
04/13/2016

| | | |
|---|---|---|
| IN RE: | § | |
| ATP OIL & GAS CORPORATION | § | CASE NO: 12-36187 |
|     Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| SUPREME SERVICE & SPECIALTY CO., | § | |
| INC. | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 13-3192 |
| | § | |
| BENNU OIL & GAS, LLC | § | |
|     Defendant(s) | § | |

## MEMORANDUM OPINION

The Court considers competing motions for summary judgment.  (ECF No. 19 and 20). The issue central to both motions can be simply stated: whether on-shore storage services necessary to conduct well site operations give rise to a privilege under the Louisiana Oil Well Lien Act ("LOWLA") made applicable by the Outer Continental Shelf Lands Act ("OCSLA").

As a preliminary matter, it is unclear what fact issues remain to be resolved after the Court issues an order consistent with this Memorandum Opinion.  Bennu seeks only partial summary judgment on the issue of whether the on-shore storage services Supreme provided to ATP entitle Supreme to a lien and privilege under LOWLA.  (ECF No. 19).  Supreme has indicated that it may have provided other services to ATP that commenced prior to the Senior Lien cut-off date, but it has not identified or pleaded them.

### Factual Background

On August 17, 2012, ATP Oil & Gas Corporation filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On October 17, 2013 the Court approved ATP's sale

motions and entered the final order (1) approving the sale of certain of the ATP's assets free and clear of claims and liens, and (2) approving the assumption and assignment of contracts and leases (the "Final Sale Order").  (Case No. 12-36187 ECF No. 2706).  Pursuant to the Final Sale Order, Bennu Oil & Gas LLC acquired certain assets as defined by the Final Sale Order. Included in these assets was ATP's interest in the Telemark, Ship Shoal, and High Island leases. (*Id.*).   These interests were sold free and clear of all liens subject only to Assumed Encumbrances, Assumed Obligations, and Senior Liens (all defined in the Final Sale Order).  (*Id.* at 10, 31).  The Final Sale Order defines "Senior Liens" as the legitimate liens on the assets that rank senior in priority to the DIP Liens.  (*Id.* at ¶N).  Liens rank senior in priority to the DIP Liens if they attached before June 21, 2010 (the "Senior Lien cut-off date").  Consequently, any services entitling a party to a lien must have been commenced prior to June 21, 2010.

Supreme provided two types of services to ATP: (1) rental of completion and fishing tools and (2) climate-controlled storage of ATP's screens and blanks used in completing ATP's wells.  (ECF No. 19 at 3).  Bennu admits that Supreme provided services to ATP that entitled it to a lien and privilege under LOWLA as early as June 25, 2010.  As of June 21, 2010, however, Bennu alleges, and Supreme agrees, that Supreme was providing on-shore climate-controlled storage for ATP.  (ECF No. 19 at 3-4; ECF No. 20 at 3).  The materials in storage were subsequently used for the services that entitled Supreme to a privilege on June 25, 2010.  The parties dispute whether the on-shore storage commenced prior to the Senior Lien cut-off date qualifies as services entitling Supreme to a lien under LOWLA.

### Jurisdiction

At a minimum, this Court has "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b). Section 1334 provides that district courts have subject matter jurisdiction over all "civil

proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  With respect to bankruptcy cases that remain open, the Fifth Circuit has held that "it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11."  *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir.1987). The Fifth Circuit noted that § 1334(b)'s language operates "conjunctively to define the scope of jurisdiction." *Id.*  Consequently, bankruptcy courts need only "determine whether a matter is at least 'related to' the bankruptcy."  *Bass v. Denney (In re Bass),* 171 F.3d 1016, 1022 (5th Cir.1999) (citing *Walker v. Cadle Co. (In re Walker),* 51 F.3d 562, 569 (5th Cir.1995); *In re Wood,* 825 F.2d at 93).

Subject matter jurisdiction is determined at the time the complaint is filed.  *Carney v. Resolution Trust Corp.,* 19 F.3d 950, 954 (5th Cir.1994) (citing *Rosa v. Resolution Trust Co.,* 938 F.2d 383, 392 n. 12 (3d Cir.), *cert. denied,* 502 U.S. 981 (1991)).  As of the date of the Complaint—August 26, 2013, the Debtor had filed an Asset Purchase Agreement which proposed selling substantially all of the Debtor's assets to an undisclosed buyer (ultimately Bennu) and establishing a $55,000,000.00 Senior Lien Escrow.  (Case No. 12-36187; ECF No. 2074-1).  Senior Prior Liens would be first paid out of the Senior Lien Escrow and the Debtor's estate retained a contingent interest in leftover funds from the Escrow.  (Case No. 12-36187; ECF No. 2706).

At a minimum, this Court possesses 'related to' jurisdiction because resolution of the case may affect ATP's bankruptcy estate.  The Fifth Circuit has construed "related to" jurisdiction broadly.  *See TXNB Internal Case v. GPR Holdings L.L.C. (In re TXNB Internal Case),* 483 F.3d 292, 298 (5th Cir.2007).  An adversary proceeding falls within the court's "related to" jurisdiction if "the outcome of that proceeding could *conceivably* have any effect on

the estate being administered in bankruptcy." *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987) (citing *Pacor, Inc. v. Higgins (In re Pacor),* 743 F.2d 984, 994 (3rd Cir.1984)).   The adjudication of claims in this lawsuit could reduce the Debtor's contingent interest in the Senior Lien Escrow.   The depletion of the Senior Lien Escrow could also cause other lien claimants to assert claims against the Debtor's Estate.   At the time this adversary proceeding commenced, the Senior Lien Escrow had not been exhausted.   Furthermore, "determinations of the validity, extent, or priority of liens" are considered core matters and 'arise in' a case under Title 11.   28 U.S.C. § 157(b)(2)(k); *Bennu Oil & Gas, LLC v. Bluewater Indus., L.P. (In re ATP Oil & Gas Corp.),* 2015 WL 4381068 at *1-2 (Bankr. S.D. Tex. July 15, 2015).   The Court possesses subject matter jurisdiction over this adversary proceeding.

## Constitutional Authority

Although subject matter jurisdiction is proper in this Court, questions regarding an Article I judge's constitutional authority must be addressed.   Under *Stern v. Marshall,* the Supreme Court held that whether a bankruptcy court can enter a final judgment in a case depends on whether the cause of action stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.   131 S.Ct. 2594, 2618 (2011).   This adversary proceeding involves state law claims between two non-debtor parties and would not necessarily be resolved in the claims allowance process.   Bennu has affirmatively consented to this Court's issuing a final judgment in this adversary proceeding.   (ECF No. 15 at 2).   Supreme has not affirmatively consented to the entry of final judgment.   *See Wellness Int'l Network, Ltd. v. Sharif,* 135 S.Ct. 1932 (2015) ("We hold that Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge").

Although it is unlikely this Court possesses the necessary constitutional authority to enter final judgment, a court may still issue interlocutory orders in proceedings where the court lacks authority to issue a final judgment. *Trevino v. HSBC Mortg. Serv. (In re Trevino),* 535 B.R. 110, 125 (Bankr.S.D.Tex.2015). An order resolving fewer than all of the claims presented in a complaint is interlocutory. *Id.* at 126. As the Court is not granting summary judgment over all claims presented in this lawsuit, the order accompanying this opinion is interlocutory.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings. A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *City & Cnty. of S. F., Cal. v. Sheehan*, 135 S.Ct, 1765, 1769 (2015). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine

dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

the initial burden, the motion should be granted only if the non-movant cannot show a genuine

dispute of material fact.   If the non-movant bears the burden of proof of an issue, the movant

must show the absence of sufficient evidence to support an essential element of the non-movant's

claim.  *Celotex*, 477 U.S. at 325.   Upon an adequate showing of insufficient evidence, the non-

movant must respond with sufficient evidence to support the challenged element of its case.  *Id.*

at 324.  The motion should be granted only if the nonmovant cannot produce evidence to support

an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir.

2005).

## Analysis

It is appropriate to begin the analysis by considering the definition of certain terms under

LOWLA:

For purposes of this Part:

 (4)(a)  "Operations" are every activity conducted by or for a lessee on a well site
for the purpose of:

> (i)      Drilling, completing, testing, producing, reworking, or abandoning
> a well.

> (ii)     Saving, treating, or disposing of hydrocarbons or other substances
> produced from a well.

> (iii)    Injecting substances into the earth to produce or enhance the
> production of hydrocarbons.

(4)(b)  "Operations" do not include an activity conducted for the purpose of
transporting, handling, processing, treating, or otherwise dealing with:

> (i)      Liquid hydrocarbons produced or separated at the well site after
> being removed from a leasehold tank and delivered into a truck, barge,
> pipeline, or other facility for transportation away from the well site.

> (ii)     Hydrocarbons produced in gaseous form, or produced in
> association with those produced in gaseous form and not separated at the
> well site, after being delivered into a pipeline for transportation away from
> the well site or delivered to a plant at the well site for processing or
> manufacturing.

(iii)    Salt water or another waste substance produced in association with hydrocarbons, after it is placed in a truck, rail-car, pipeline, or other means of transportation for disposal away from the well site.

…

(10)    A "contractor" is a person, other than a lessee, who contracts with an operator to perform the operations giving rise to the claimant's privilege or who, by subcontract with a contractor of the operator or through a series of subcontracts emanating from such a contractor, contracts to perform all or part of the operations contracted for by the operator.

…

(12)    A "well site" is the area covered by:

(a) The operating interest.

(b) A unit in which the operating interest participates.

(c) A tract of land or the area covered by a servitude or predial lease of the lessee on which is located a well drilled to, producing from, or injecting substances into the area covered by the operating interest.

La. R.S. § 9:4861.

In 1995, the Louisiana legislature overhauled the previous Oil, Gas and Water Wells lien statute.  La. R.S. § 9:4861-4873;  Patricia H. Chicoine, *Lien on LOWLA; It's a Privilege: Recent Revisions to the Louisiana Oil Well Lien Act*, 57 La. L. Rev. 1133, 1135 (1997).  The Louisiana Oil Well Lien Act, referred to as LOWLA, reformed the previous statute in a number of ways.  Most notably for the purposes of this Memorandum Opinion, it added a definitions section and narrowed the scope of activities giving rise to a lien to those closer to the location of actual oil and gas operations.  Chicoine, *supra*, at 1135.  For example, claimants whose services are attenuated from oil & gas operations are limited "unless such claimants fall within the statute's definition of 'contractor' and their work is performed or their supplies are furnished to the 'well site' as defined in the [a]ct." *Id.*

In the present case, Supreme argues that its provision of on-shore climate-controlled storage to ATP is sufficient to create a privilege under LOWLA.  Supreme argues that it is a

contractor, entitled to a LOWLA privilege under either § 9:4862(A)(1) or (2).  This provision states:

> A.    The following persons have a privilege over the property described in R.S. 9:4863 to secure the following obligations incurred in operations:
>
>> (1)    A contractor for the price of his contract for operations.
>>
>> (2)    A contractor for the price of his contract for providing services or facilities to persons performing labor or services on a well site located in the waters of the state.

La. R.S. § 9:4862(A)(1)-(2).  The Court must first determine whether Supreme is a contractor, under the statutory definition.  According to the definition, a contractor is a non-lessee who contracts with an operator to perform the "*operations* giving rise to the claimant's privilege" or a non-lessee who subcontracts with a contractor of an operator "to perform all or part of the *operations* contracted for by the operator." La. R.S. § 9:4861(10) (emphasis added).  Supreme is not the lessee, so the only question to resolve is whether it contracted—or subcontracted—to perform "operations."

LOWLA provides a comprehensive definition of the term "operations," and a description of what does and does not constitute "operations." La. R.S. § 9:4861(4)(a)-(b).  It is apparent that for activities to be considered "operations," they must be conducted on the "well site." La. R.S. § 9:4861(4)(a).  The applicable definitions of "well site" include the area covered by "[t]he operating interest" or "[a] unit in which the operating interest participates." La. R.S. § 9:4862(12).    Consequently, for Supreme to be a contractor for the purposes of LOWLA, it must have contracted (or subcontracted) to perform operations which must necessarily be conducted on the well site.

Supreme argues that "[it] is unquestionably a contractor." (ECF No. 20 at 20).  However, this conclusory declaration does not account for the defined terms included in the LOWLA

definition of contractor.  It is safe to say that Supreme is a contractor under LOWLA only to the extent it contracted to perform operations.  However, this inevitably leads back to the operations requirement, which requires that the work have been done on the well site.  *J. Ray McDermott, Inc. v. Berry Contracting, L.P.*, 2004 WL 224583, at *8 (E.D. La. Feb. 3, 2004) (determining that the contractor "may only assert a LOWLA lien in its capacity as a contractor under that statute to the extent it performed operations, which by definition must have been on the well site.").

The determinative question that will resolve Supreme's status as a contractor is whether Supreme performed operations on the well site.  It is undisputed that the services Supreme asserts entitle it to a privilege were on-shore storage services.  These services were conducted at the "water's edge," and are "not the kind of service[s] readily performed at sea." (ECF No. 20 at 14).

Services provided on-shore are not "operations" performed at the "well site" under LOWLA.  Supreme does not allege that the storage facility is within the lessee's operating interest or a unit in which the operating interest participates.  *See* La. R.S. § 9:4862(12).  Instead, Supreme alleges that the "storage of ATP's Telemark completion equipment at the Lockport Storage facility was both necessary and directly connected to ATP's completion operations at the Telemark Wells."  (ECF No. 20 at 6).   Further, Supreme states that "[c]limate-controlled storage is both generally unavailable on offshore drill sties and financially impracticable to otherwise make available off-shore." *Id.*

Supreme's explanation regarding the necessity and reasonableness of the storage services vis-à-vis the rental services is not challenged.  However, necessity and reasonableness are not factors to consider under LOWLA when determining whether a privilege is due.  LOWLA does not grant a privilege for *all* services provided, even preparation services integral and necessary to

provide services that would entitle a claimant to a privilege under LOWLA.  LOWLA only grants a privilege for *operations* which must necessarily be conducted at the *well site*.  La. R.S. § 9:4862(A)(1)-(2).  "The underlying rationale for this distinction is the greater effort of persons who provide . . . services to offshore locations; whereas, persons who provide [services] to onshore locations . . . expend considerably less effort in providing such services."  Chicoine, *supra*, at 1144.

There are at least three cases interpreting LOWLA that support this interpretation and the application of the terms "contractor," "well site," and "operations."

In *Matte Services Corp. v. Onyx Consulting Engineers, LLC*, Onyx subcontracted services to be performed under its contract to construct an oil and gas platform for Forest Oil Corp.  2007 WL 1087592 at *1 (E.D. La. April 10, 2007).  Matte was subcontracted to construct and refurbish a deck assembly to be installed on the platform.  *Id.*  Matte carried out its services at its land-based facility in Vermilion Parish, Louisiana.  *Id.*

Matte eventually sued seeking recognition of its lien and privilege pursuant to LOWLA. Matte, conceding that it did not perform any work at the well site, argued that its work should be deemed to have been performed at the well site because under the contract it was not considered complete until the platform was commissioned.  *Id.* at *3.  The court disagreed, holding that "[t]he plain and clear language of LOWLA limits the scope of the privilege to persons who perform services on a well site . . . ."  *Id.*  The court went further to point out that the word "operations" under LOWLA "is clearly limited to activities conducted on a well site." *Id.*

In *J. Ray McDermott, Inc. v. Berry Contracting*, Murphy Oil contracted with McDermott to construct a spar platform on the Outer Continental Shelf.  2004 WL 224583 at *1.  Berry Contracting, L.P., d/b/a Bay, Ltd. ("Bay") was subcontracted by McDermott to construct the

topside deck of the platform. *Id.* Bay eventually sued McDermott and Murphy alleging a lien and privilege under LOWLA for the work it performed. McDermott argued, among other things, that the privilege was invalid because it secures work beyond that done on the well site. *Id.* at *7. Bay argued, as Supreme does in the present case, that its status as a subcontractor entitled it to a privilege under 9:4862(A)(2) of LOWLA. Specifically, Bay argued that its status as a subcontractor meant that it only needed to provide services to a party performing services (McDermott) on a well site, and that it need not personally perform the services on the well site. The court analyzed the statute and concluded the following:

> It appears undisputed that Murphy is the operator of the well in question and McDermott is Murphy's contractor. By its subcontract with a contractor of the operator (McDermott), Bay is a subcontractor as described in the quoted provision, and thus a contractor for the purposes of LOWLA, to the extent it contracted to perform operations. Thus, we have come full circle to the reimportation of the operations requirement, which in turn demands that the work have been done on the well site. Accordingly, Bay may only assert a LOWLA lien in its capacity as a contractor under that statute to the extent it performed operations, which by definition must have been on the well site.

*Id.* at *8.

Unlike the previous cases, the Fifth Circuit in *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.* recognized a valid lien under LOWLA. 671 F.3d 512 (5th Cir. 2012). In *Cutting Underwater*, the lessee, Dominion Exploration & Production, Inc., contracted with Con-Dive, LLC to remove an offshore platform that had been toppled by Hurricane Rita. *Id.* at 513. Con-Dive subcontracted certain work associated with removing the platform to several entities, including T. Baker Smith, Inc. ("TBS"). *Id.* The Fifth Circuit recognized TBS's lien under LOWLA, acknowledging that the definition of "well site" under LOWLA is not restricted to the exact physical location of a well. *Id.* at 524 (citing 9:4861(5)(a); Chicoine, *supra*, at 1142). The court found it relevant that the work TBS was doing—conducting a sonar survey of

the site prior to removal of the toppled platform—was performed *offshore* in the vicinity of the well site. *Id.* The court distinguished both *Matte Services* and *J. Ray McDermott* on the grounds that they involved work that was performed *on-shore*. *Id.* at 525.

The 1995 enactment of LOWLA significantly changed Louisiana law as it applies to oil well liens. *Id.* at 517. The cases cited by Supreme that support its argument for recognizing a lien were all decided before 1995, and consequently did not consider the revised statute, including the clarified definitions of "contractor," "well site," and "operations.". The Court does not find, as Supreme has asserted, that *Cutting Underwater* supports Supreme's position. It is undisputed that the services Supreme provided to ATP prior to the Senior Lien cut-off date were conducted entirely on-shore. Accordingly, Supreme is not entitled to a lien and privilege under LOWLA for the on-shore storage services it provided to ATP prior to the senior Lien cut-off date.

**Conclusion**

The Court will issue an order consistent with this Memorandum Opinion.

**SIGNED** <u>April 12, 2016.</u>

_____
**Marvin Isgur**
**UNITED STATES BANKRUPTCY JUDGE**
